UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHRISTINA M. ROBIN,

                                    Plaintiff,

        - against -

                                                            **OPINION & ORDER**

BON SECOURS COMMUNITY HOSPITAL                              No. 23-CV-9222 (CS)
SUBSIDIARY OF WMCHEALTH, KIM
HIRKALER, SR., 1199 SEIU UNITED
HEALTHCARE WORKERS EAST, MARY
LEAHY, REGINA STAFFORD, GORDON
EMIGH, and JORDY RABINOWITZ,

                                    Defendants.
------------------------------------------------------------x

Appearances:

Christina M. Robin
Matamoras, Pennsylvania
*Pro Se Plaintiff*

Dayna B. Tann
Michael J. Keane
Garfunkel Wild, P.C.
Great Neck, New York
*Counsel for Defendants Bon Secours Community Hospital, Kim Hirkaler,*
*Mary Leahy, and Regina Stafford*

Aleksandr L. Felstiner
Levy Ratner, P.C.
New York, New York
*Counsel for Defendants 1199SEIU United Healthcare Workers East*

Seibel, J.

        Defendants Bon Secours Community Hospital (the "Hospital"), Kim Hirkaler, Mary

Leahy, and Regina Stafford (collectively, the "Hospital Defendants"), and Defendants 1199SEIU

United Healthcare Workers East (the "Union") and Gordon Emigh (collectively, the "Union

Defendants"),[1] have moved to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 36, 37.)  For the reasons set forth below, Defendants' motions are GRANTED.

## I.    <u>BACKGROUND</u>

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended Complaint.  (*See* ECF No. 33 ("SAC").)  Because Plaintiff is proceeding *pro se*, I also consider certain factual allegations included in Plaintiff's preceding complaints, (ECF No. 1 ("Compl."); ECF No. 27 ("FAC")), and her opposition papers, (ECF Nos. 42, 43, 46, 47), as well as the materials attached thereto, to the extent those factual allegations are consistent with the SAC.[2] *See Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *1 & n.5 (S.D.N.Y. Jan. 12, 2024) ("Because plaintiff is proceeding *pro se*, the Court considers new allegations in her opposition, to the extent they are consistent with the amended complaint."); *Brown v. Twitter, Automattic Inc.*, No. 19-CV-6328, 2021 WL 3887611, at *6 n.8 (S.D.N.Y. Aug. 31, 2021) ("The Court will consider new factual allegations in Plaintiff's briefing where they are consistent with the operative pleadings."); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in *pro se* plaintiff['s] preceding complaints in order to supplement those in amended complaints."); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *a pro se*

---

[1] The docket contains no indication that Emigh has ever been served, nor did counsel for the Union file a notice of appearance on his behalf, but the Union has made arguments on his behalf.

[2] All citations to documents submitted by Plaintiff use the page numbers set by the Court's Electronic Case Filing ("ECF") system.

plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Brown v. Doe*, No. 13-CV-8409, 2014 WL 5461815, at *1 n.1 (S.D.N.Y. Oct. 28, 2014) (considering allegations that "appear in documents attached to the Complaint and in Plaintiff's subsequent letters to the Court" because "in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint").

A.    **Facts**

*Pro se* Plaintiff Christina M. Robin worked at the Hospital as an emergency room nurse for over seventeen years.  (SAC at 3.)  The Hospital maintains a staff of more than seven hundred employees and has a collective bargaining agreement ("CBA") with the Union.  (*Id.* at 7.)  Plaintiff became a member of the Union upon her hiring in August 2004.  (*Id.* at 3.)  On August 13, 2021, the Hospital notified employees that it would implement a mandatory COVID-19 vaccination policy, under which employees had "to become fully vaccinated with a coronavirus vaccine by September 30, 2021 or be permanently terminated from employment." (*Id.* at 7.)  The Hospital's policy also permitted limited exemptions for medical or religious reasons.  (*See id.* at 16-17; Compl. at 11-12.)

On August 26, 2021, the New York State Department of Health ("DOH") issued an emergency rule (the "State Mandate") requiring "[c]overed entities," such as hospitals and other specified healthcare entities, to require their "personnel" to be "fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021."  10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021).  (*See* SAC at 7 (referencing the State Mandate).)   "Personnel" was defined to include "members of the medical and nursing staff . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered

personnel, patients or residents to the disease."  10 N.Y.C.R.R. § 2.61(a)(2) (Aug. 26, 2021).[3]

While the State Mandate permitted a medical exemption for covered employees, it did not

mention a religious exemption.  *See id.* § 2.61(d) (Aug. 26, 2021).

     In September 2021, the Hospital changed the date for compliance with its COVID-19

vaccination policy to October 27, 2021,[4] without negotiating the decision with the Union.  (SAC

at 7.)[5]  Plaintiff, a devout Christian with sincerely held religious beliefs, requested a religious

exemption to the COVID-19 vaccination policy.  (FAC at 11; *see* SAC at 3, 10-11. 16-17.)

Plaintiff alleges that she submitted a religious exemption request in response to an email from

the Hospital in September 2021, (SAC at 3, 16-17), although she neither pleads any details about

the request nor attaches a copy of the request in her papers.  While Plaintiff awaited a response,

she was required to be tested for COVID-19 twice weekly and to wear an N-95 mask that could

not be removed in "hallway[s], break room[s], [the] cafeteria, lounge, or lunch room."  (*Id.* at

17.)

     On October 11, 2021, Plaintiff received an email from an unidentified Hospital official

stating that her request for a religious exemption had been denied, without further explanation.

(SAC at 16.)   The email stated that she had to receive her first dose of the COVID-19 vaccine by

October 18, 2021, and provide proof of vaccination by that date, or face suspension.  (*Id.*)  On

October 13, 2021, Plaintiff replied to her denial email, stating that she "c[ould] not understand"

---

[3] The State Mandate was repealed in October 2023, *see* 10 N.Y.C.R.R. § 2.61 (Oct. 4, 2023), but this does not impact my analysis because the events at issue took place while the rule was in effect in 2021.

[4] The SAC states this change occurred in "September 2022," (SAC at 7), but this must be a typo and Plaintiff meant September 2021.

[5] Plaintiff does not explain why this change, which appears to be favorable to the Hospital's employees, should have been the subject of negotiation with the Union.

the denial of her request, that she did "not recognize [the Hospital's] authority to reject [her deeply held] religious beliefs," that she "expect[ed the Hospital] to accommodate" her beliefs, and that the Hospital should "govern [it]self accordingly." (*Id.*) The next day, Plaintiff received a response stating, "There are no appeals of decisions regarding requests for an exemption from taking the COVID-19 vaccine as a reasonable accommodation of a sincerely held religious belief." (FAC at 14; SAC at 16.) On October 18, 2021, Plaintiff received a phone call from her immediate supervisor, stating that she was suspended without pay and had until October 27, 2021, to be vaccinated against COVID-19 or face termination on October 28, 2021. (*See* Compl. at 25.) On either October 27 or October 28, 2021, Plaintiff was terminated for refusing to comply with the Hospital's vaccination policy and the State Mandate. (*See* FAC at 15; SAC at 8; ECF No. 42 at 7.)

In October, November, and December 2021, Plaintiff emailed the Union Defendants asking that a grievance be filed regarding her termination. (*See* ECF No. 43 at 5-6; ECF No. 46 at 3-4; ECF No. 47 at 12-15.) In December 2021, the Union filed a class-action grievance on behalf of union members who were terminated for not getting the COVID-19 vaccine, requesting that they be paid for unused vacation time. (*See* ECF No. 47 at 16.) In connection with that grievance, the Union negotiated a settlement agreement with the Hospital, which was sent to Plaintiff on July 22, 2022, but she apparently declined to sign it because it would have required her to grant a release. (*See* SAC at 11, 18-19.)

### B.  **Procedural History**

Plaintiff filed her Complaint on October 20, 2023, asserting that Defendants Bon Secours, Hirkaler, and the Union violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law

("NYCHRL"), and New York Labor Law by refusing to grant her religious exemption requests and terminating her employment.  (*See generally* Compl.)  She also asserted that those Defendants created a hostile work environment and abused, discriminated, and humiliated her in connection with the State Mandate, including by forcing her to wear an N-95 mask, denying her food and drink during work hours, and refusing to pay out her accrued vacation time.  (*See id.* at 3-5, 10, 15-16, 18-19.)  On March 15, 2024, the Hospital, Hirkaler, and the Union filed pre-motion letters in anticipation of their motions to dismiss and requested a conference.  (ECF Nos. 23, 24.)  On April 5, 2024, before a pre-motion conference was held, Plaintiff filed her First Amended Complaint, naming a number of individual defendants but no longer naming either the Hospital or the Union.  (*See generally* FAC.)  In her FAC, Plaintiff asserted claims under 42 U.S.C. § 1983 for violations of "Due Process of the Law, Deliberately Indifference, First Amendment" and "Conspiracy, Retaliation for filing a grievance," (*id.* at 4), as well as claims for violations of Title VII and the NYSHRL, the National Labor Relations Act ("NLRA"), "Denial of Religious Accommodation," and "Denial of interactive process," (*id.* at 5).

On April 15, 2024, the Court held a pre-motion conference with Plaintiff, counsel for the Hospital Defendants, and counsel for the Union Defendants.  (*See* Minute Entry dated Apr. 15, 2024.)  At the conference, the Court clarified with Plaintiff that she had not intended to drop the Hospital and the Union from the case.  The Court subsequently granted Plaintiff leave to amend her FAC and set a briefing schedule.  (*See id*.)  On May 8, 2024, Plaintiff filed the SAC, naming the Hospital Defendants and Union Defendants as well as Jordy Rabinowitz, "Unknown Union Members," and "Unknown Defendants of the Bon Secours Community Hospital UMCHealth," (SAC at 1), and asserting the same claims as in her FAC, as well as additional violations of the "EEOC Guidelines & Compliance Manual," "Section 291 of the [NYSHRL]," "NY Labor Law

Section 198c," the "Employee Retirement Income Security Act of 1974 ["ERISA"]," and "Code of Federal Regulations," (*id.* at 3).[6]  The instant motions followed.  (*See* ECF Nos. 36 to 49.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure

---

[6] To date, it does not appear that Rabinowitz (or any of the "unknown" defendants) has been properly served.  (*See* ECF No. 39 at 1 n.2.)  As explained below, the Court concludes that Plaintiff has not asserted viable claims against the Hospital Defendants and the Union Defendants, and this disposition would apply equally to the claims against the unserved defendants.  *See Brown v. Womack*, No. 16-CV-31, 2019 WL 4689166, at *7 (W.D.N.Y. Sept. 26, 2019) (collecting cases).  Given these circumstances, the Court dismisses Plaintiff's claims against Rabinowitz, the "Unknown Union Members," and the "Unknown Defendants of the Bon Secours Community Hospital UMCHealth" *sua sponte*.  *See Brown*, 2019 WL 4689166, at *7 (appropriate to dismiss claims against defendant who has not been served or appeared where findings would apply equally to that defendant); *McLennon v. N.Y.C.*, No. 13-CV-128, 2015 WL 1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) ("As the court's rulings herein would apply equally to the non-moving defendants in this case, the court dismisses plaintiff['s] . . . claims for failure to state a claim as to the non-moving and unserved defendants *sua sponte*."); *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 463 n.2 (S.D.N.Y. 2014) (treating motion to dismiss as if brought on behalf of all defendants because "Plaintiffs' claims against [unserved] defendants suffer[ed] from the same deficiencies" as the served defendants), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015) (summary order).

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v.*

*Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments

that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less

stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9

(1980) (*per curiam*); *see St. Hillaire v. Montefiore Med. Ctr.*, No. 23-CV-4763, 2024 WL

167337, at *2 (S.D.N.Y. Jan. 16, 2024). Nevertheless, "threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice," and district courts

"cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618

F.3d 162, 170 (2d Cir. 2010); *see St. Hillaire*, 2024 WL 167337, at *4.

### B.    Documents Properly Considered

When deciding a motion to dismiss under Rule 12(b)(6):

a district court may consider the facts alleged in the complaint, documents
attached to the complaint as exhibits, and documents incorporated by reference in

the complaint. Where a document is not incorporated by reference, the court may
nevertheless consider it where the complaint relies heavily upon its terms and
effect, thereby rendering the document integral to the complaint. For a document
to be considered integral to the complaint, the plaintiff must rely on the terms and
effect of a document in drafting the complaint[;] mere notice or possession is not
enough. And even if a document is integral to the complaint, it must be clear on
the record that no dispute exists regarding the authenticity or accuracy of the
document, and it must be clear that there exist no material disputed issues of fact
regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New
York*, No. 20-CV-1378, 2021 WL 4314793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v.
Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25,
2021). The Court may therefore consider the documents attached to Plaintiff's Complaint, FAC,
SAC, her opposition to these motions, and her declarations filed in support of her opposition.

## III.    DISCUSSION

### A.    National Labor Relations Act and Labor Management Relations Act

Plaintiff asserts separate claims against the Union Defendants and the Hospital for
violations of her rights under the NLRA. (*See* SAC at 3, 5, 7-11.) The Court construes the
claims against the Union Defendants to be that they breached their duty of fair representation
("DFR") by not grieving her dismissal and during settlement negotiations with the Hospital
regarding the payment of accrued benefit time. (*See* SAC at 11; ECF No. 42 at 5; ECF No. 43 at
5-8; ECF No. 47 at 8.) Plaintiff contends that the Union Defendants operated out of animus
against her as a religious-exemption seeker and drafted an "inferior" settlement agreement. (*See*
SAC at 11; ECF No. 42 at 7; ECF No. 46 at 18; ECF No. 47 at 8.) The Union Defendants argue
that any DFR claim asserted by Plaintiff is barred by the NLRA's statute of limitations, and any
NYSHRL claims asserted by her are preempted by § 301 of the Labor Management Relations
Act ("LMRA"). (ECF No. 36-1 ("Union Ds' Mem.") at 9-12.)

A DFR claim "is a cause of action 'implied under the scheme' of the [NLRA], 29 U.S.C. §§ 151-169." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). "[T]he limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period." *Id.* (citing *DelCostello*, 462 U.S. at 169); *see Ubalde v. Maimonides Med. Ctr.*, No. 23-CV-3948, 2024 WL 3553438, at *5 (E.D.N.Y. July 26, 2024) ("A duty of fair representation claim has a six-months' limitations period . . . ."). A DFR claim "accrues no later than the time when plaintiff[] knew or reasonably should have known that such a breach of the [DFR] had occurred, even if some possibility of nonjudicial enforcement remained." *Ubalde*, 2024 WL 3553438, at *5 (collecting cases); *see Sullivan v. Gelb*, 735 F. Supp. 3d 282, 297, 308 (S.D.N.Y. May 23, 2024) (statute of limitations for a DFR claim "begins to run when the employee knew or should have known of the breach of the duty of fair representation"), *reconsideration denied*, No. 23-CV-5194, 2024 WL 3030540 (S.D.N.Y. June 17, 2024). While "[a] statute of limitations affirmative defense normally cannot be decided on a motion to dismiss," a defendant may raise the defense "where the dates in a complaint show that an action is barred by a statute of limitations." *Cruz v. Local 32BJ*, No. 22-CV-3068, 2024 WL 4357036, at *15 (S.D.N.Y. Sept. 30, 2024).

Here, the six-month limitations period for Plaintiff's DFR claim against the Union Defendants began to run, at the latest, when she received the July 22, 2022 letter attaching the settlement agreement and release regarding payout of her accrued benefit time. (*See* SAC at 11, 18.) Plaintiff filed this lawsuit on October 20, 2023, (ECF No. 1), nearly fifteen months after July 22, 2022. Plaintiff does not allege when she received the settlement letter – only when it

was mailed – but even if it was delayed for several months, her DFR claim would still be untimely.  Nor does she allege any facts supporting the "rare and exceptional circumstances" necessary to warrant equitable tolling.  *See Sullivan*, 735 F. Supp. 3d at 310-311 (*pro se* plaintiff's "status and ignorance of the law" does not "merit equitable tolling").  Accordingly, the Court dismisses Plaintiff's DFR claims against the Union Defendants as time-barred.[7]

Plaintiff further alleges that the Hospital did not negotiate with the Union regarding the vaccination policy or its effects on bargaining unit members, and unfairly terminated Plaintiff's employment, purportedly in violation of NLRA §§ 8(a)(1) and 8(a)(5).  (*See* SAC at 5, 7-9.) Specifically, Plaintiff alleges that Leahy violated § 8(a)(1) by "spying" on Plaintiff and her coworkers in that she "crash[ed]" an August 22, 2021 Zoom video call with an attorney who had set up the call to provide information to interested employees.  (*Id.* at 9, 10, 14.)  Plaintiff alleges that the "spying" was designed to intimidate the meeting participants and chill their rights under § 7 of the NLRA.  (*See id.* at 9-10.)  She also alleges that Stafford – "[e]mboldened by brazen unlawful activities undertaken by Dr. Leahy in crashing the August 22nd Zoom virtual meeting and spying upon the employees," (*id.* at 10) – distributed throughout the workplace copies of a newspaper column by a Christian pastor who opined that Jesus Christ would have approved of the COVID-19 vaccine as protecting the vulnerable.  (*Id.* at 10, 15.)[8]  Plaintiff also alleges that

---

[7] To the extent that Plaintiff intended to raise a DFR claim against Emigh, that claim must also be dismissed because "union agents are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process."  *See Sullivan*, 735 F. Supp. 3d at 307 ("A duty of fair representation cause of action does not lie against the individual defendants.").

[8] The article ends as follows:  "By invoking the name of Jesus to claim exemption, you are using the Lord's name in vain and therefore sinning.  Now, you may have your own political or personal reasons not to do so, but please, stop claiming your faith in Jesus Christ as justification."  (SAC at 15.)

the Hospital violated her § 7 rights because it took adverse employment actions, "i.e.,
surveillance and spying," (*id.* at 9), against her in retaliation for engaging in her protected
collective bargaining activities, and ultimately compelled her to be vaccinated or face
termination, which chilled her right to refrain from taking the COVID-19 vaccine, (*id.* at 9-10.)
The Hospital argues, among other things, that the National Labor Relations Board ("NLRB")
possesses exclusive jurisdiction over claims for violations of § 7 or § 8 of the NLRA. (*See* ECF
No. 40 ("Hospital Ds' Mem.") at 7-8.)

Section 7 of the NLRA states that "[e]mployees shall have the right to self-organization,
to form, join, or assist labor organizations . . . and to engage in other concerted activities for the
purpose of collective bargaining . . . ." 29 U.S.C. § 157; *see Moore v. U.S. Postal Serv.*, No. 18-
CV-9967, 2019 WL 13388322, at *2 (S.D.N.Y. July 12, 2019). Under § 8 of the NLRA, an
employer may not "'interfere with, restrain, or coerce employees in the exercise of the rights
guaranteed in section 157 of this title,' . . . discriminate 'in regard to hire or tenure of
employment or any term or condition of employment to encourage or discourage membership in
any labor organization,' and 'discharge or otherwise discriminate against an employee because
he has filed charges or given testimony under this subchapter.'" *Phillips v. Russ*, No. 23-CV-
8283, 2023 WL 8452424, at *5 (S.D.N.Y. Dec. 5, 2023) (quoting 29 U.S.C. § 158). Put another
way, § 8 of the NLRA prohibits employers from interfering with an employee's § 7 rights. *See
Moore*, 2019 WL 13388322, at *2. The NLRB has exclusive jurisdiction over claims asserted
against an employer brought under § 7 and § 8 under the NLRA. *See Phillips*, 2023 WL
8452424, at *5 ("[W]hen an activity is arguably subject to § 7 or § 8 of the NLRA, the States as
well as the federal courts must defer to the exclusive competence of the NLRB if the danger of
state interference with national policy is to be averted."); *Moore*, 2019 WL 13388322, at *2

("[T]he NLRB has exclusive jurisdiction over claims of unfair labor practices under section 8 of the NLRA.").

Here, Plaintiff expressly asserts NRLA claims against the Hospital under § 7 and § 8 of that statute. (*See* SAC at 3, 5, 7-10.) Her allegations that the Hospital coerced, intimidated, discriminated, or retaliated against her in connection with her union activities "fall[] within the purview of section 8 of the NLRA and therefore, exclusive jurisdiction must rest with the NLRB unless the claim is collateral to plaintiff's fair representation claim[] against the Union." *Phillips*, 2023 WL 8452424, at *5; *see Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 21-CV-7153, 2023 WL 6307362, at *2 (E.D.N.Y. Sept. 28, 2023) ("Not only do[es] Plaintiff[] expressly assert an NLRA claim, but [her] allegations make clear that the[] asserted activity is arguably subject to Section 7 or Section 8 of [the] NLRA. Accordingly, the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."). Because the only potential collateral claim against the Union is Plaintiff's DFR claim, which the Court has dismissed as time-barred, the Court cannot rely on that claim to exercise jurisdiction over Plaintiff's §§ 7 and 8 claims against the Hospital. *See Phillips*, 2023 WL 8452424, at *5. Accordingly, the NLRA claims asserted against the Hospital must be dismissed for lack of subject matter jurisdiction. *Id.*

Finally, to the extent that Plaintiff alleges NYSHRL discrimination claims based on the Union's conduct, those claims are preempted by federal law. "When a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301 of the LMRA and must instead be resolved by reference to federal law." *Ubalde*, 2024 WL 3553438, at *3. LMRA § 301 completely preempts all state law claims. *See Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (*per curiam*) ("The

Supreme Court has identified only three statutes as having the requisite preemptive force to

support complete preemption, one of which is § 301 of the LMRA.").  Section 301(a) governs

both "claims founded directly on rights created by collective-bargaining agreements" and

"claims substantially dependent on analysis of a collective-bargaining agreement."  *Id.*; *see*

*Ubalde*, 2024 WL 3553438, at *4.  Thus, if resolving a state law claim is either "substantially

dependent upon or inextricably intertwined" with analysis of a collective bargaining agreement's

terms, the state law claim must either be construed as a § 301 claim or dismissed as preempted

by federal law.  *Id.*  But if a plaintiff asserts her legal rights that are independent of a collective

bargaining agreement, preemption does not occur.  *See Whitehurst*, 928 F.3d at 207.  "A state-

law claim is independent when resolving it does not require construing the collective-bargaining

agreement."  *Ubalde*, 2024 WL 3553438, at *4; *see Martinez v. Staten Island Univ. Hosp.*, No.

19-CV-2672, 2020 WL 13837813, at *8 (E.D.N.Y. June 19, 2020).[9]

---

[9] While the NLRA does not contain an express preemption provision, the Supreme Court
has "articulated two distinct NLRA pre-emption principles, *Garmon* preemption and *Machinists*
preemption."  *Ubalde*, 2024 WL 3553438, at *4 n.6 (citing *Bldg. & Constr. Trades Council of
Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993)).
The former "forbids state and local regulation of activities that are protected by § 7 of the NLRA,
or constitute an unfair labor practice under § 8," while the latter "prohibits state and municipal
regulation of areas that have been left to be controlled by the free play of economic forces."  *Id.*
As discussed above with respect to the NLRA claims against the Hospital, *Garmon* preemption
confers on the NLRB exclusive jurisdiction over claims based on §§ 7 or 8 of the NLRA.  *See*
*Flanagan*, 2023 WL 6307362, at *2.

In that vein, Plaintiff raises for the first time in opposition papers that the Hospital
violated her *Weingarten* rights.  (*See* ECF No. 42 at 4-5; ECF No. 46 at 3, 5, 6, 11, 15-16.)
"*Weingarten* rights refer[] to the right to union representation during an investigatory interview
under the [NLRA]."  *Lee v. Saul*, No. 19-CV-6553, 2022 WL 1051216, at *12 (S.D.N.Y. Feb.
10, 2022).  "The [NLRB] has exclusive jurisdiction when there is an arguable violation of the
NLRA."  *Id.*  Therefore – putting aside Plaintiff's failure to provide any facts about any
investigatory interview – "the proper forum to hear [Plaintiff's] complaint is the [NLRB], not
this Court."  *Id.*  Thus, Plaintiff's claim that her *Weingarten* rights have been violated must also
be dismissed.

Here, Plaintiff's allegations against the Union Defendants are entirely predicated on alleged discrimination that occurred during the grievance process and settlement negotiations, which are dependent on interpreting the CBA.  For example, she alleges that because of her religion, she "was never included in the negotiations of the [settlement] agreement" and that she was "[s]eparate[ed] from the usual Separation Agreement for Union Members that can be found in [the CBA]."  (SAC at 11; *see* ECF No. 46 at 18; ECF No. 47 at 7 ("The 'Payout Agreement' the union endorsed is solely for union members seeking a religious exemption.  These are inferior terms.").)  Plaintiff also requested that the Union grieve her suspension and mistreatment under the terms of the CBA, (*see* ECF No. 43 at 6; ECF No. 46 at 7), and alleges that the Union "failed to participate in the interactive process" and, along with Hirkaler and Emigh, "unilaterally changed the terms and conditions of employment when they negotiated 'final payout' conditions for [union] members who filed Religious Exemption requests," (FAC at 15; *see also* ECF No. 46 at 18.)  Additionally, Plaintiff stated in her opposition that the religious exemption seekers were forced "to accept inferior terms while ALL other union members receive[d] a payout in accordance with the original CBA upon termination."  (ECF No. 42 at 7; *see* SAC at 11.)

As these allegations make clear, and drawing all reasonable inferences in favor of Plaintiff as a *pro se* litigant, Plaintiff's NYSRHL claims against the Union are substantially dependent upon analyzing the CBA and the rights it confers on her, and thus those claims are preempted by § 301 of the LMRA.  *See Ubalde*, 2024 WL 3553438, at *4 ("Plaintiff's claims against the Union Defendants therefore are 'inextricably intertwined' with the collective-bargaining agreement with 1199SEIU because the Union Defendants' alleged failure to properly represent her and enforce workplace standards arose out of her status as a member of

1199SEIU."); *Martinez*, 2020 WL 13837813, at \*9 (state law claims preempted where plaintiff did not "set forth any non-conclusory allegations supporting an inference of discrimination on the part of the union that can be disentangled from the facts she alleges regarding the union's failure to arbitrate her grievance via the procedures set forth in the CBA"); *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012) ("Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a [CBA], plaintiff's claims must be construed as preempted by LMRA § 301.").

Accordingly, the Court dismisses Plaintiff's NYSHRL claims against the Union Defendants as preempted by LMRA § 301.  *See Whitehurst*, 928 F.3d at 209-10 ("To adjudicate [Plaintiff's] claims against the Union, then, a court would be required to interpret the CBA. [Plaintiff's] claims against the Union are therefore preempted by § 301."); *Martinez*, 2020 WL 13837813, at \*9 (dismissing NYSHRL claims asserted against the Union that were "substantially dependent upon an analysis of the CBA" as preempted under LMRA § 301).[10]

---

[10] I would reach the same result if I construed these claims as a hybrid LMRA § 301 / DFR claim because the hybrid claim would also be time-barred for the reasons set forth regarding Plaintiff's DFR claim above.  *See Peralta v. 32BJ SEIU*, No. 21-1638, 2022 WL 792164, at \*1-2 (2d Cir. Mar. 16, 2022) (summary order) (LMRA-NLRA claims time-barred where plaintiff filed suit more than six months after he "knew or reasonably should have known" about any breach of the union's DFR); *Ubalde*, 2024 WL 3553438, at \*5 (dismissing hybrid LMRA § 301 claim where lawsuit brought "long after the six-month statute of limitations period had passed"); *Sullivan*, 735 F. Supp. 3d at 297 ("Because [Plaintiff] has alleged violations on the part of both the union and the employer, [Plaintiff's] suit is a hybrid section 301/DFR action. Notably, the limitations period on this hybrid § 301/DFR action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation."); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (dismissing hybrid LMRA § 301 claim as untimely under six months statute of limitations).

B.    <u>Title VII of the Civil Rights Act of 1964</u>

The Court turns next to Plaintiff's claims for religious discrimination under Title VII. [11]

"To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim

must plausibly allege that (1) [she] held a bona fide religious belief conflicting with an

employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she]  was

disciplined for failure to comply with the conflicting employment requirement."  *D'Cunha v.*

*Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary

order).  Title VII defines "religion" as including "all aspects of religious observance and practice,

as well as belief," and imposes an obligation on an employer "to reasonably accommodate to an

employee's . . . religious observance or practice" unless doing so would cause "undue hardship

on the conduct of the employer's business." 42 U.S.C. § 2000e(j).  Thus, "when an employee

has a genuine religious practice that conflicts with a requirement of employment," the employer

"must offer the aggrieved employee a reasonable accommodation, unless doing so would cause

the employer to suffer an undue hardship."  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir.

2002).  "A reasonable accommodation is one that eliminates the conflict between the

employment requirement and the employee's religious practice."  *Conde*, 2024 WL 168282, at

*7.  Accordingly, to state a claim for religious discrimination under Title VII for failing to

accommodate, an employee must plausibly allege that she "'actually requires an accommodation

of . . . her religious practice' and that 'the employer's desire to avoid the prospective

---

[11] To the extent that Plaintiff asserts Title VII claims against Hirkaler, Stafford, Leahy, Emigh, Rabinowitz, and the "unknown" individual defendants, "it is long settled that individual defendants may not be subject to liability under Title VII."  *Williams v. N.Y.C. Dep't of Educ.*, No. 17-CV-1996, 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).  Thus, the Title VII claims asserted against the individual Defendants must be dismissed.

accommodation was a motivating factor in an employment decision.'" *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order) (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 773-74 (2015)).

"An employer does not violate Title VII, however, if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Cosme*, 287 F.3d at 158); *see Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *5 (S.D.N.Y. Mar. 30, 2023) ("Thus, when an employee has a genuine religious practice or observance, the employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."). The Supreme Court recently clarified that an "undue hardship" is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023); *see D'Cunha*, 2023 WL 7986441, at *2 (noting that in *Groff* the Supreme Court rejected the "more than *de minimis*" standard set forth in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)). While undue hardship is an affirmative defense, an employer may raise it on a pre-answer motion to dismiss if the facts establishing the defense are clear from the face of the complaint. *See Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *3 (2d Cir. Dec. 20, 2024) (summary order); *D'Cunha*, 2023 WL 7986441, at *2; *Lowman*, 821 F. App'x at 32.

### 1.     Title VII Claims Against the Union

The Union argues that Plaintiff failed to exhaust her administrative remedies under Title VII because she has not timely filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), and her time to do so has passed. (*See* Union Ds' Mem. at 7-8.) "'[E]xhaustion of administrative remedies through the EEOC is an essential element' of

Title VII's statutory scheme." *Montgomery v. N.Y. Presbyterian Hosp.*, No. 23-CV-9201, 2025 WL 240733, at *2 (S.D.N.Y. Jan. 17, 2025) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per curiam*)); *see* 42 U.S.C. §§ 2000e-5(e)(1), (f). Accordingly, "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018); *see Montgomery*, 2025 WL 240733, at *2; *Dent v. N.Y.C. Dep't of Educ.*, No. 22-CV-5357, 2024 WL 3362211, at *4 & n.6 (E.D.N.Y. Mar. 1, 2024).  "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023).  This requirement functions as a statute of limitations that bars a plaintiff's claims if an administrative claim is not timely filed.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (claim is time-barred if EEOC charge is not timely filed "within 300 days of the employment practice"); *Hardaway*, 879 F.3d at 491 (to the same effect); *see also Merisier v. Kings Cnty. Hosp.*, No. 15-CV-2739, 2018 WL 1474176, at *3 (E.D.N.Y. Mar. 23, 2018) (administrative exhaustion requirement applies to *pro se* plaintiffs).

The failure to exhaust administrative remedies "should be treated as an affirmative defense, since statutes of limitation typically function as affirmative defenses in federal litigation." *Hardaway*, 879 F.3d at 491.  As an affirmative defense, a defendant bears the burden to plead and prove it, *see id.*, but the defense may be properly considered "where the circumstances are sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate on a motion to dismiss," *Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-CV-6869, 2018 WL 4284324, at *4 (S.D.N.Y. Sept. 7, 2018); *see BPP Ill., LLC v. Royal*

*Bank of Scotland Grp. PLC*, 603 F. App'x 57, 59 (2d Cir. 2015) (summary order); *Dent*, 2024 WL 3362211, at *4.

Here, the Union asserts that Plaintiff did not file a timely administrative charge against the Union with the EEOC, (*see* Union Ds' Mem. at 7-8), and Plaintiff does not contend otherwise. Thus, Plaintiff has failed to exhaust her administrative remedies. *See Montgomery*, 2025 WL 240733, at *2-3 (dismissing Title VII claims for failure to exhaust where plaintiff did not timely file an administrative charge with the EEOC); *Lugo v. Lesbian & Gay Cmtys. Serv. Ctr.*, No. 21-CV-7423, 2024 WL 5168042, at *5 (S.D.N.Y. Dec. 19, 2024) (dismissing Title VII claims for failure to exhaust where plaintiff did not plead that he filed a charge with EEOC or that he received a right to sue letter against defendant).

In two declarations submitted several weeks after her opposition was due, (*see* ECF No. 35 (plaintiff's opposition due Aug. 19, 2024); ECF No. 46 (filed on Sept. 3, 2024); ECF No. 47 (filed on Sept. 25, 2024)), which I could disregard but which I consider under the special solicitude given to *pro se* litigants, Plaintiff argues that an inquiry she filed with the EEOC satisfies her exhaustion requirement, (*see* ECF No. 46 at 8; ECF No. 47 at 9, 17). But the inquiry itself explicitly states that it is not the same as filing an EEOC charge, (*see* ECF No. 47 at 17 ("ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION")), and filing an inquiry with the EEOC does not satisfy Title VII's administrative exhaustion requirements, *see Montgomery v. N.Y. Presbyterian Hosp.*, No. 23-CV-9201, 2024 WL 4068786, at *5 (S.D.N.Y. Aug. 13, 2024) (concluding that initial inquiry to EEOC was not equivalent to filing a charge), *report and recommendation adopted*, 2025 WL 240733 (S.D.N.Y. Jan. 17, 2025). While Plaintiff also argues that she was "barred from the interactive process," (ECF No. 47 at 9), that argument is misplaced. Not only is that statement

conclusory but it also misses the point:  failure to engage in the interactive process may be part of her underlying complaint against the Hospital, but it is not a component of filing an administrative charge with the EEOC, and Plaintiff does not allege how any failure in that regard prevented her from timely filing a charge.

Nor does Plaintiff plead any circumstances warranting equitable tolling.  *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (*per curiam*) (*pro se* plaintiff's failure "to act diligently cannot invoke equitable principles to excuse that lack of diligence"); *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (to the same effect); *Montgomery*, 2024 WL 4068786, at *5 ("Other than submitting an initial inquiry, [Plaintiff] does not plead that she actively pursued judicial remedies in the 300-day window.  [Plaintiff] does not assert any rare or exceptional circumstances that prevented her from filing a[ timely] EEOC charge . . . .").  As more than 300 days have passed since the occurrence of the alleged misconduct by the Union, Plaintiff's Title VII claims against the Union are time-barred.  *See, e.g.*, *Zerilli-Edelglass*, 333 F.3d at 80-81; *Montgomery*, 2025 WL 240733, at *2.

Accordingly, Plaintiff's Title VII claims against the Union must be dismissed.

### 2. <u>Failure to Accommodate Claim Against the Hospital</u>

Next, with respect to the Hospital,[12] the Court construes the SAC as asserting a claim for failing to accommodate Plaintiff's religious beliefs.  (*See* SAC at 2, 4-5, 7-11.)  The Hospital does not dispute that Plaintiff plausibly alleges a *prima facie* case for religious discrimination under Title VII, but instead argues that the accommodation sought by Plaintiff – a religious exemption from the COVID-19 vaccination requirement while continuing her employment as a

---

[12] Plaintiff attached a copy of the right-to-sue letter issued by the EEOC on August 9, 2023, as to the Hospital.  (*See* Compl. at 8.)  Because Plaintiff brought her lawsuit within 90 days of the letter, her Title VII claims against the Hospital are timely.

patient-facing emergency room nurse – would have posed an undue hardship because it would have required the Hospital Defendants to violate the State Mandate and face penalties from the DOH, risked the health and safety of patients and other employees, and exposed the Hospital to tort liability.  (*See* Hospital Ds' Mem. at 10-18.)

Title VII cannot be used to require employers to break the law.  *See D'Cunha,* 2023 WL 7986441, at *3 ("[T]he burden placed on an employer from violating a state law, like the State Mandate in this case, is both excessive and unjustifiable."); *Bey v. City of N.Y.*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."); *Lowman*, 821 F. App'x at 31-32 (affirming dismissal of Title VII complaint where requested religious accommodation would cause employer undue hardship by forcing it to violate the law); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law.").  At the time the Hospital denied Plaintiff's religious exemption, the State Mandate required all "covered entities," like the Hospital, to "continuously require personnel to be fully vaccinated against COVID-19," absent a medical exemption.  10 N.Y.C.R.R. § 2.61(c) (Aug. 26, 2021). Plaintiff does not dispute that, as a patient-facing nurse, she was "personnel" as defined in the regulation, and she does not suggest that she qualified for a medical exemption.  Thus, the Hospital would have violated the State Mandate had it granted the requested religious exemption.

The Second Circuit in *We The Patriots USA, Inc. v. Hochul (We The Patriots I)* held that while the State Mandate, "on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule," it does bar religious exemptions.  17 F.4th 266, 292 (2d Cir. 2021) (*per curiam*), *clarified by*, 17

F.4th 368 (2d Cir. 2021); *see D'Cunha*, 2023 WL 7986441, at *3.  Here, Plaintiff does not allege

that she requested an accommodation – such as remote work or some other arrangement – that

would have removed her from the definition of "personnel"; rather she wanted to remain within

the scope of the State Mandate yet be exempted from it.  But covered employees are not entitled

to a "blanket religious exemption allowing them to continue working at their current positions

unvaccinated."  *We The Patriots I*, 17 F.4th at 292.  While "it may be *possible* under the [State

Mandate] for an employer to *accommodate* – not *exempt* – employees with religious objections,

by employing them in a manner that removes them from the [State Mandate]'s definition of

'personnel,'" *We The Patriots USA, Inc. v. Hochul* (*We The Patriots II*), 17 F.4th 368, 370 (2d

Cir. 2021) (*per curiam*) (emphasis in original), *cert. denied*, 142 S. Ct. 2569 (2022) (mem.),

Plaintiff here did not seek such an accommodation.  Had the Hospital granted Plaintiff's request

– to exempt her from the vaccination requirement and allow her to continue in her position as a

patient-facing nurse – it would have violated the State Mandate, thus suffering an undue hardship

even under the heightened *Groff* standard.  *See Does 1-2*, 2024 WL 5182675, at *4.[13]

---

[13] Aside from the State Mandate, there is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiff to remain unvaccinated while working at the Hospital's emergency department, *see Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 511 (S.D.N.Y. 2023) ("[P]ermitting Plaintiff to potentially expose other workers at [the Hospital] to the COVID-19 virus . . . [is a] significant hardship[] that create[s] an undue burden on Defendant. . . ."), *aff'd sub nom. Alagarin v. N.Y.C. Health and Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary order); *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945, 2024 WL 917330, at *3 (S.D.N.Y. Mar. 4, 2024) (increased exposure risk of hospital's patients to COVID-19 "separately qualifies as an undue hardship"), and the risk of civil liability to anyone infected by an unvaccinated employee, *see Montgomery*, 2024 WL 4068786, at *7 ("[H]onoring [Plaintiff's] exemption request would expose an unvaccinated healthcare worker to vulnerable patients, creating substantial additional safety and liability risks for both [Defendant] and its patients."); *Algarin*, 678 F. Supp. 3d at 511 (exposing the hospital to "legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff" constituted an undue burden on defendant); *Robinson v. Child.'s Hosp. Bos.*, No. 14-CV-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) ("Undue

Courts in this Circuit have regularly dismissed Title VII claims brought by similarly situated plaintiffs who sought blanket religious exemptions that would have imposed an undue hardship on defendants. *See, e.g.*, *Does 1-2*, 2024 WL 5182675, at *4; *Brown v. S. Shore Univ. Hosp.*, No. 23-CV-6374, 2025 WL 71730, at *16 (E.D.N.Y. Jan. 10, 2025); *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024); *Corrales*, 2023 WL 2711415, at *7-8; *D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023), *aff'd*, 2023 WL 7986441 (2d Cir. Nov. 17, 2023); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 WL 7059182, at *3-4 (S.D.N.Y. Oct. 12, 2022).[14]

While the SAC never states that Plaintiff sought an accommodation to remove her from the definition of "personnel" under the State Mandate, Plaintiff alleges in her opposition that the Hospital could have provided her with a remote work accommodation. (*See* ECF No. 42 at 6.) But given Plaintiff's role as a patient-facing emergency room nurse, the Court cannot imagine how the Hospital could have provided an accommodation that neither violated the State Mandate nor resulted in an undue burden to the Hospital. *See Conde*, 2024 WL 168282, at *8. Plaintiff would not have been able to remotely perform patient care requiring physical contact with patients – obviously a duty of a nurse working in the emergency room where patients may require immediate physical treatment to save their lives – and thus the Hospital would have

---

hardship can also exist if the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer.").

[14] For support, Plaintiff cites to Justice Gorsuch's dissent to the denial of injunctive relief in *Dr. A v. Hochul*, 142 S. Ct. 552, 553 (2021) (Gorsuch, J., dissenting). (*See* SAC at 4-5.) That dissent does not carry force of law.

needed to have another nurse cover Plaintiff's duties or hire a replacement.  Considering the severity of the COVID-19 pandemic and the stress placed on healthcare systems across the country, "relieving plaintiff of her patient-facing duties would have imposed an undue hardship on [the Hospital]."  *Conde*, 2024 WL 168282, at *8; *see D'Cunha*, 2023 WL 7986441, at *2; *Brown*, 2025 WL 71730, at *16; *Devita v. Mount Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *6 (S.D.N.Y. June 18, 2024); *Parks*, 2024 WL 917330, at *3; *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023); *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023).[15]

Accordingly, Plaintiff's Title VII failure to accommodate claim against the Hospital is dismissed.

### 3.    Hostile Work Environment Claim Against the Hospital

The Court also construes the SAC as alleging a hostile work environment claim against the Hospital.  (*See* SAC at 6, 10; ECF No. 42 at 7, 9.); *see Merisier*, 2018 WL 1474176, at *6 ("Though [Plaintiff] does not specifically allege a hostile work environment, she indicates that

---

[15] Plaintiff argues that she was "denied [an] interactive process to even begin the discussion of any accommodations, terms, conditions or privileges of employment."  (ECF No. 42 at 6.)  In support, Plaintiff points to fragments of incomplete email threads that she attached to the SAC and her declarations.  (*See* SAC at 16; ECF No. 43 at 3-4.)  But these threads – noticeably missing the details of Plaintiff's religious exemption request – do not plausibly allege that she requested any accommodation other than exemption or that the Hospital refused to engage in an interactive process.  It appears that the Hospital sent Plaintiff a letter detailing her obligations while her exemption request remained pending, (*see* SAC at 17), sent an email stating that her exemption request was denied, (*see id.* at 16), and promptly responded to Plaintiff's email appealing that denial, (*see id.*).  If anything, these emails suggest that Plaintiff resisted cooperating in the interactive process.  (*See id.* at 16 (email from Plaintiff stating that she "can not understand" the denial of her request, that she did "not recognize [the Hospital's] authority to reject [her] religious beliefs," that she "expect[ed the Hospital] to accommodate" her beliefs, and that the Hospital should "govern [it]self accordingly")).)  In any event, as discussed in the text, there does not appear to have been any feasible accommodation that would not have resulted in an undue hardship to the Hospital.

she was subjected to 'harassment' at [the Hospital], and, therefore, in an abundance of caution, the Court addresses whether [Plaintiff] has properly alleged such a claim.").  "To prevail on a hostile work environment claim under . . . Title VII . . . , a plaintiff must allege:  (1) she was subjected to harassment, *based on her protected class*, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Grimes v. N. Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *11 (S.D.N.Y. Feb. 26, 2024) (emphasis in original); *see Vasquez v. City of N.Y. – Off. of Mayor*, No. 22-CV-5068, 2024 WL 1348702, at *9 (E.D.N.Y. Mar. 30, 2024) ("Under Title VII, 'a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015)).

At the threshold, the SAC is almost completely devoid of non-conclusory factual allegations that support a religiously hostile work environment claim.  Liberally construing the SAC to raise the strongest arguments the allegations suggest, Plaintiff alleges that the Hospital created a hostile work environment by requiring her to wear an N-95 mask (as opposed to the simple blue mask worn by other employees), which "outed" her as unvaccinated, (*see* SAC at 11; ECF No. 42 at 7),[16] and denying her unmasked access to common areas such as "Lunch Rooms, Break Rooms, Cafeteria and Lounges," (*see* SAC at 11; *see also* Compl. at 19 (alleging that Plaintiff needed to walk off Hospital property or sneak into the bathroom to eat or drink)).  While

---

[16] Many individuals, even if vaccinated, wore N-95 masks during the height of the pandemic, so the Court does not find it plausible that such a mask necessarily "outed" one as unvaccinated.

Plaintiff may have found the alleged conditions to be annoying, they are far too minor to plausibly constitute "harassment sufficiently severe or pervasive to create an abusive working environment."  *Grimes*, 2024 WL 816208, at *11; *see Fleming v. MaxMara USA, Inc*., 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) ("quite minor" allegations – "that defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails" do not "support a finding of a hostile work environment that is pervasive or severe"); *Carvalho v. Associated Brands, Inc*., No. 15-CV-72, 2016 WL 8709809, at *9 (W.D.N.Y. May 13, 2016) (incidents consisting of "minor inconveniences, unfavorable job assignments, and slight reprimands are neither severe nor pervasive, did not alter the conditions of plaintiff's employment and are insufficient to establish a hostile work environment"), *report and recommendation adopted*, 2017 WL 405403 (W.D.N.Y. Jan. 31, 2017), *aff'd*, 707 F. App'x 742 (2d Cir. 2017) (summary order).

Moreover, these conditions were consequences of noncompliance with the State Mandate and the Hospital's vaccination policy, and there is no indication that they were limited to those who were unvaccinated for religious reasons.  Putting aside conclusory allegations, Plaintiff does not show how the Hospital treated her differently based on her religion as opposed to her noncompliance with the State Mandate.  Nor does she allege how the Hospital treated her differently from other employees who did not share her protected religious beliefs.  In fact, Plaintiff alleges that the Hospital treated unvaccinated employees – whether seeking medical or religious exemptions – similarly.  (*See* SAC at 8 ("[The Hospital's] actions resulted in the termination of employment for employees choosing not to become fully vaccinated (including employees whose requests for medical and/or religious accommodation were unilaterally

rejected.").)  Where any unvaccinated employee was treated the same – whether they were unvaccinated for religious, medical, spiritual or political reasons – it cannot be said that any hostile environment was based on religion.  *See Brennan v. Metro. Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."); *Vasquez,* 2024 WL 1348702, at *10 ("The mere fact that Plaintiff disagreed with the orders [s]he was subjected to and disliked how they were implemented is insufficient to plausibly plead that h[er] workplace was permeated with *discriminatory* intimidation.") (emphasis in original); *Richards v. Dep't of Educ. of City of N.Y.*, No. 21-CV-338, 2022 WL 329226, at *15 (S.D.N.Y. Feb. 2, 2022) ("Though Plaintiff's work environment may have been unpleasant or even hostile in some sense of the word, her claim must be dismissed absent additional factual allegations establishing that she was subject to this conduct due to her protected characteristic.").

Plaintiff also alleges harassment based on Stafford's distribution of the column by the pastor who found it sinful to refuse the vaccine in the name of Christ.  (*See* SAC at 10, 15; FAC at 11; ECF No. 42 at 6-7.)  It is not clear that a Christian pastor's take on Christianity is even properly understood as hostile to Christianity, but I will assume that Plaintiff reasonably interpreted it as hostile to her view of her religion.  Plaintiff has not alleged that Stafford said or did anything beyond distributing copies of the article.  Her action might have been well-meaning but could be considered rude, offensive or unprofessional.  Either way, it was a one-off event that is not so "extraordinarily severe" to support Plaintiff's claim.  *See Ancrum v. N.Y.C. Dep't of Env't Prot.*, No. 23-CV-10978, 2024 WL 5009145, at *5 (S.D.N.Y. Dec. 6, 2024) (dismissing hostile work environment claims under Title VII where the complaint did not allege "sufficient facts to plausibly show that this single incident was 'extraordinarily severe' such that it would

suffice to establish a hostile work environment on its own"); *Maxius v. Mount Sinai Health Sys.*

*Inc.*, No. 21-CV-10422, 2024 WL 4166157, at *4 (S.D.N.Y. Sept. 12, 2024) ("While a single

incident can sometimes be enough to create a hostile work environment, that incident must be

extraordinarily severe."); *see also Fleming.*, 371 F. App'x at 118-19 (single isolated incident,

plainly motivated by race and arguably severe, not sufficient alone to support hostile work

environment).  "[I]t is well-settled that allegations related to abrasive relations in the workplace,

without more, are insufficient to state a Title VII hostile work environment claim."  *Vasquez*,

2024 WL 1348702, at *10 (posting satirical picture of Jesus Christ in group chat did not support

hostile work environment claim); *see Maxius*, 2024 WL 4166157, at *4 ("Simple teasing,

offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not

support a claim of discriminatory harassment."); *Grimes*, 2024 WL 816208, at *12 (dismissing

claim where plaintiff did not allege that another employee's actions were motivated by religious

animus).

In sum, Plaintiff's allegations, whether considered singly or in combination, do not

plausibly show a severe or pervasive environment, and even if they did, they do not plausibly

show that any such environment was based on religion.  Accordingly, the Title VII hostile work

environment claim is dismissed.

### C.    ERISA Claims[17]

Next, Plaintiff alleges that the Hospital and Hirkaler withheld Plaintiff's 401(B)

retirement contributions for over one year after Plaintiff's termination and thereby violated her

---

[17] The first page of the SAC lists "Deliberately/Indifference," "Due Process of the Law,"
"Conspiracy," and "First Amendment Right" as additional claims.  (SAC at 1.)   The SAC also
references violations of "EEOC Guidelines & Compliance Manual," "NY Labor Law Section
198c," and "Code of Federal Regulations."  (*Id.* at 3.)  Plaintiff neither expands upon these

rights under ERISA.  (*See* SAC at 11; ECF No. 42 at 8-9.)  Any claim asserted against Hirkaler must be dismissed because "an individual is not liable for corporate ERISA obligations solely by virtue of his [or her] role as officer, shareholder, or manager."  *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993); *see Serv. Emps. Pension Fund of Upstate N.Y. v. Pearl Nursing Ctr. of Rochester, LLC*, No. 22-CV-850, 2022 WL 16528575, at *2 (N.D.N.Y. Oct. 28, 2022).

To the extent that Plaintiff asserts an ERISA claim against the Hospital, she has pleaded no facts regarding her claim apart from alleging a definition of "plan assets" under 29 C.F.R. § 2510.3-102 (a federal regulation that defines "plan assets" with respect to participant contributions), (SAC at 6), a statement that the Hospital and Hirkaler "released [Plaintiff's] 401(B) contribution to [Plaintiff's] IRA" one year after her termination which plaintiff "believe[s] . . . is an ERISA violation," (*id.* at 11), and a copy of an October 2022 letter from Plaintiff's IRA provider detailing the amount of a withdrawal, (*id.* at 20).  These conclusory allegations are insufficient to state a plausible claim.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In any event, Plaintiff has also failed to exhaust her administrative remedies as to her ERISA claim.  "ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before

---

claims in her pleadings nor connects them with any factual allegations that would render them plausible, falling woefully short of the federal pleading standard.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Thus, these claims must be dismissed for failing to comply with the basic pleading requirements of Federal Rule of Civil Procedure 8.  *See Shamilov v. City of N.Y.*, No. 20-CV-10224, 2024 WL 708193, at *4 (S.D.N.Y. Feb. 21, 2024) ("A complaint fails to comply with Rule 8(a)(2) if it is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

turning to litigation." *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 293

(E.D.N.Y. 2021).  Failing to exhaust administrative remedies under an ERISA plan before filing

a federal lawsuit "requires [an] ERISA cause of action to be dismissed."  *Id.* (collecting cases);

*see Murphy Med. Assocs., LLC v. EmblemHealth, Inc.*, No. 22-CV-59, 2024 WL 4388305, at *13

(D. Conn. Oct. 3, 2024) ("In order to assert an ERISA claim, a plaintiff must exhaust

administrative remedies before filing suit.").  While exhaustion is an affirmative defense,

"[e]stablishing exhaustion is generally considered a prerequisite to pursuing an ERISA action"

and a plaintiff must still "plead exhaustion of administrative remedies under the ERISA plan."

*Neurological Surgery*, 511 F. Supp. 3d at 295.  "The failure [to] exhaust appears on the face of a

complaint where, for example, plaintiff explicitly admits a conscious decision not to exhaust, or

plaintiff pleads no facts suggesting any effort to exhaust the remedies available through [her]

ERISA administrative plan."  *Id.* at 296.  Here, Plaintiff has failed to allege in her SAC that she

attempted to exhaust her available ERISA administrative remedies.  Nor does she include any

facts in her opposition to the Hospital's motion.[18]  Accordingly, her ERISA claims against the

Hospital must be dismissed.  *See Azzarmi v. Neubauer*, No. 20-CV-9155, 2024 WL 4275589, at

*27 (S.D.N.Y. Sept. 24, 2024) ("[T]he ERISA claims . . . still fail because Plaintiff has raised no

allegation even remotely suggesting that Plaintiff exhausted available administrative remedies.")

---

[18] In her opposition, Plaintiff argues that she was "barred from the 'administrative remedies' when she was denied the INTERACTIVE PROCESS."  (ECF No. 42 at 9.)  While unclear, the Court presumes that Plaintiff refers to her administrative remedies under ERISA. But the interactive process is not a component of exhausting administrative remedies under an ERISA plan, and Plaintiff does not allege how any failure to engage in an interactive process with respect to her religious exemption request prevented her from exhausting those remedies. To the extent Plaintiff attempted to argue futility of exhaustion to excuse herself from the requirement, "Plaintiff's futility allegations are conclusory statements unsupported by plausible factual allegations."  *Neurological Surgery*, 511 F. Supp. 3d at 296 (noting "the standard for demonstrating futility is very high" and that a plaintiff faces a "heavy burden").

(collecting cases), *reconsideration denied sub nom.*, *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, 2025 WL 35003 (S.D.N.Y. Jan. 6, 2025); *Cooper v. Int'l Bus. Machs. Corp.*, No. 24-CV-656, 2024 WL 5010488, at *7-8 (D. Conn. Dec. 6, 2024) (dismissing ERISA claims for lack of exhaustion of administrative remedies); *Murphy*, 2024 WL 4388305, at *14 (dismissing claims where general and conclusory allegations failed to demonstrate that plaintiff properly exhausted ERISA administrative remedies); *Neurological Surgery*, 511 F. Supp. 3d at 296 ("Courts within the Second Circuit routinely dismiss ERISA claims on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies.") (collecting cases).

### D.    New York State Human Rights Law Claims

Finally, the Court construes the SAC to assert religious discrimination claims under the NYSHRL against the Hospital Defendants for failure to accommodate and hostile work environment.  (*See* SAC at 4, 10-11.)[19]

#### 1.    Failure to Accommodate

The NYSHRL provides that "'it shall be an unlawful discriminatory practice' for an employer to discharge or discriminate against an employee 'in compensation or in terms, conditions, or privileges of employment' because of the employee's 'creed.'"  *Algarin*, 678 F.

---

[19] While I have dismissed the only federal claims asserted in this action, I may still "exercise supplemental jurisdiction over 'claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'"  *Addonizio*, 2024 WL 2958795, at *5 (quoting 28 U.S.C. § 1367(a)); *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a common nucleus of operative fact with the federal-law ones.").  Given the "common nucleus of operative fact" between the federal and NYSHRL claims present here, I choose to exercise supplemental jurisdiction over the state law claims.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002) (supplemental jurisdiction proper where federal and state claims "ar[ose] out of approximately the same set of events"); *Van Duser v. Tozzer Ltd.*, No. 23-CV-9329, 2024 WL 4635495, at *4 (S.D.N.Y. Oct. 31, 2024) (to the same effect).  Moreover, it appears that the Court may have diversity jurisdiction in any event.  (*See* SAC at 1-2 (alleging Plaintiff's address in Pennsylvania and the Defendants' addresses in New York).)

Supp. 3d at 507 (quoting N.Y. Exec. Law § 296(1)(a)).  "Courts scrutinize discrimination claims

brought pursuant to the NYSHRL under the lenient pleading standard for NYCHRL claims."

*Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189, 2024 WL 5294261, at *6 (E.D.N.Y. Oct. 23, 2024),

*report and recommendation adopted*, 2024 WL 5198706 (E.D.N.Y. Dec. 23, 2024).  Under this

standard, "[a] reasonable accommodation . . . is an accommodation to an employee's religious

observance or practice that does not cause an undue hardship to the employer."  *Algarin*, 678 F.

Supp. 3d at 512.  Like the federal standard under *Groff*, the NYSHRL defines an "undue

hardship" as an "accommodation requiring significant expense or difficulty, including significant

interference with the safe or efficient operation of the workplace."  *Id.*  For the reasons discussed

earlier with respect to Title VII, requiring the Hospital to violate the State Mandate would

constitute an undue hardship under the NYSHRL, *see Addonizio*, 2024 WL 2958795, at *6-7;

*Algarin*, 678 F. Supp. 3d at 513, as would relieving her of her duties as a patient-facing nurse,

*see Conde*, 2024 WL 168282, at *8; *Algarin*, 678 F. Supp. 3d at 513.

Thus, Plaintiff's NYSHRL claim for failure to accommodate must be dismissed.

## 2.       Hostile Work Environment

"Historically, the same standard [applied to Title VII hostile work environment claims]

also applied to NYSHRL hostile work environment claims."  *Samuels v. City of N.Y.*, No. 22-

CV-1904, 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023).  "However, the NYSHRL was

amended in 2019 to eliminate the severe and pervasive requirement."  *Id.*  "Thus, to state a

hostile work environment claim based on conduct postdating the 2019 amendments, a plaintiff

must plausibly allege that he or she was subjected to inferior terms, conditions, or privileges of

employment because of the individual's membership in one or more protected categories."  *Id.*;

*see Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14,

2021) ("[U]nder the NYCHRL a Plaintiff need only demonstrate that [s]he was treated less well than other employees because of [her] protected characteristic."). Even if Plaintiff's allegations are sufficient to meet the NYSHRL's more lenient standard with respect to severity – which I doubt, given that wearing a mask in a hospital setting hardly seems serious enough to constitute an "inferior" work condition – the hostile work environment claim under the NYSHRL must still fail because Plaintiff does not allege facts showing that the conduct occurred because of her membership in a protected class. As discussed earlier with respect to Plaintiff's Title VII claims, Plaintiff does not allege how the Hospital treated her differently from other unvaccinated employees who did not share her protected religious beliefs. *See Zaki*, 2024 WL 5294261, at *7 (dismissing NYSHRL discrimination claim where plaintiff failed to allege different treatment based on protected characteristics); *Blumstein-Torrella v. N.Y.C. Dep't of Educ.*, No. 19-CV-3492, 2024 WL 4973393, at *17 (S.D.N.Y. Sept. 7, 2024) (dismissing NYSHRL hostile work environment claim where plaintiff failed to allege "sufficient facts from which to infer a discriminatory animus on the part of Defendants based on Plaintiff's . . . religion"), *report and recommendation adopted*, 2024 WL 4835669 (S.D.N.Y. Nov. 20, 2024); *Wright v. City of N.Y.*, No. 23-CV-3149, 2024 WL 3952722, at *9 (S.D.N.Y. Aug. 27, 2024) (dismissing NYSHRL hostile work environment claims where plaintiff "failed to provide sufficient evidence that any differential treatment was because of her protected characteristic"). And even if the pastor's column could be considered targeted at Plaintiff's religion, its distribution cannot be considered to have created inferior terms, conditions or privileges of employment. *See Dixon v. City of N.Y.*, No. 23-CV-8941, 2025 WL 50140, at *14 (S.D.N.Y. Jan. 7, 2025) (dismissing NYSHRL hostile work environment claim where plaintiff did not allege facts to show she was "subjected to inferior terms, conditions or privileges of employment" or treated less well than other employees

because of protected characteristic); *Reed v. Fortive Corp.*, No. 21-CV-6312, 2023 WL 4457908, at *30 (W.D.N.Y. July 11, 2023) (plaintiff's failure to plausibly allege "that her working conditions were actually 'inferior' to those of other employees" warranted dismissal of hostile work environment claim), *aff'd*, No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) (summary order); *see also Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 120 (S.D.N.Y. 2022) ("[I]t is well established that a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination.").

Accordingly, Plaintiff's NYSHRL claim for hostile work environment against the Hospital must be dismissed.

### 3.    <u>Individual Defendants</u>

"The NYSHRL provides for individual liability for discriminatory practices under two theories:  (i) if the individual qualifies as the plaintiff's 'employer,' or (ii) if the individual aided and abetted the unlawful discriminatory acts of others covered by the NYSHRL."  *Whyte v. N.Y. State Police*, No. 22-CV-5633, 2023 WL 7413087, at *12 (E.D.N.Y. Nov. 9, 2023).  To the extent Plaintiff raises any NYSHRL claims against the individual Defendants, her claims fail under both theories.  First, Plaintiff cannot prevail under the former theory because "the NYSHRL does not render individual employees liable as employers."  *Id.* at *13.  Second, Plaintiff fails under the latter theory because she has not alleged any viable underlying NYSHRL violation and thus there is nothing that the individual Defendants could have aided or abetted. *See Boonmalert v. City of N.Y.*, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order) ("Since there is no underlying NYSHRL . . . violation, there was no aiding or abetting of acts forbidden by the NYSHRL . . . ."); *Russell v. N.Y. Univ.*, 42 N.Y.3d 377, 388 (2024) ("With respect to aiding and abetting liability, there can be no such liability given that the predicate claims against

[Defendant] were properly dismissed."); *Estevez v. Berkeley Coll.*, No. 18-CV-10350, 2021 WL 3115452, at *22 (S.D.N.Y. July 19, 2021) ("Absent an underlying NYSHRL violation, Plaintiff['s] aiding and abetting claims must be dismissed as well."), *aff'd*, No. 21-1988, 2022 WL 16843460 (2d Cir. Nov. 10, 2022) (summary order).  Thus, any NYSHRL discrimination claims asserted against the individual Defendants must be dismissed.[20]

### E.    Leave to Amend

Finally, I consider whether Plaintiff should be granted leave to amend, which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, (*see* FAC, SAC), and submitted in opposition to the instant motions additional declarations that the Court has considered as supplements to the SAC, (*see* ECF Nos. 43, 46, 47), after having the benefit of pre-motion letters from Defendants, (*see* ECF Nos. 23, 24), and the discussion at the April 15, 2024 pre-motion conference, (*see* Minute Entry dated Apr. 15, 2024).  Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to

---

[20] The Hospital Defendants also argue that any claims against Stafford must be dismissed for insufficient service of process.  (Hospital Ds' Mem. at 20.)  Plaintiff contends that service was properly effected by a professional process server with first-class mail as follow up.  (ECF No. 42 at 8.)  Given my earlier rulings, I need not address these arguments.

amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in [her] complaint when [s]he first amended, [s]he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declined to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (summary order); *In re Eaton Vance Mut. Funds Fee Litig*., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at *2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special solicitude to *pro se* litigants requires only *one* . . .  opportunity to amend" and plaintiff "failed to cure the defects despite having been given an adequate notice of them and a reasonable opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend at least

three times and did not persuasively argue why a fourth amendment should be permitted); *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y. Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple opportunities to properly state h[er] claims").

Further, Plaintiff has not asked to amend or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this ruling. *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that [s]he would be able to amend h[er] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also Todd v. Fields*, No. 20-CV-3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim.").

38

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 36, 37), and close the case.

**SO ORDERED.**

Dated: February 25, 2025
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.